## Logan County Board of Education v. Fowler.

(Decided November 20, 1931.)

167

COLEMAN TAYLOR and O. M. SMITH for appellant.

JOHN H. GILLIAM for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—
Affirming.

This action involves the position of school teacher in the Red Hill school district No. 92 of Logan county for the school year 1931-32. The facts are these: Otis McElwain was elected subdistrict trustee of the Red Hill school district No. 92 of Logan county in 1929. He qualified and discharged his duties as such trustee until the latter part of the year 1929 or the early part of 1930, when he permanently removed his residence from that school district. By doing so, he vacated his office. See Curry v. Stewart, 8 Bush 560, and Hermann v. Lampe,

175 Ky. 109, 194 S. W. 122. There is some dispute whether G. S. Crafton was appointed by the county board of education of Logan county to fill out McElwain's unexpired term or not, or, if appointed, whether legally appointed or not, but there is no dispute that he thought he had been legally appointed and that he acted as subdistrict trustee until the elections in May, 1931. He admits that he never qualified for his office by taking the oath of office as is required by section 3756 of the Statutes. In February, 1931, he, as subdistrict trustee, indorsed the application of Eula Fowler, the appellee herein, to teach in his subdistrict for the school year beginning in the summer of 1931. This application was delivered to the county superintendent. It was later returned to the appellee, who said that she got it in order to procure the indorsement of the subdistrict trustee who was elected at the May election. The county superintendent is of the impression that it was absolutely withdrawn by the appellee, but his testimony on this point indicates an uncertain remembrance of exactly what took place. On April 3, 1931, the appellant, county board of education, elected Pearl Porter teacher for the school year 1931-32 in the subdistrict in question. In July, 1931, armed with the written indorsement of the subdistrict trustee elected in the May election and who, according to the evidence, had theretofore orally requested the election of appellee as teacher in his subdistrict, the appellee made an unsuccessful effort to get the county board of education to elect her as teacher for the subdistrict in dispute. When she failed, she brought this suit to compel the board to elect her. The suit was filed about eleven days after the beginning of the school. The court on final hearing adjudged the appellee the relief she sought, and from that judgment this appeal is prosecuted.

Whether Crafton was legally appointed to fill out the unexpired term of McElwain or not, or even appointed at all, is unimportant. Legally or illegally elected or appointed, he failed to qualify within a reasonable time before he attempted to indorse the application of the appellee as teacher in February, 1931. Crafton having failed to qualify within a reasonable time after his election or appointment, the vacancy in the office continued. See Brown v. Rose, 233 Ky. 549, 26 S. W. (2d) 503. Of course, if Crafton never had been elected or appointed, there was a vacancy in the office from the time McElwain became disqualified by his removal from the

district. There being then a vacancy in the office of sub-district trustee, it was the duty of the county board of education to fill this vacancy. Section 4434a-2 of the Statutes, in part, provides:

"Any vacancy that may exist in the trusteeship of any school subdistrict shall be filled by appointment by the county board of education and to them petition may be made by voters of the subdistrict."

Appellant argues that there is no duty on the part of the county board of education to fill a vacancy that may exist in the trusteeship of any school subdistrict unless and until it is petitioned to do so by the voters of the subdistrict. We are of the opinion that such a construction cannot be placed upon the statute. Had the Legislature so intended, it would have been easy to have expressed such an intention in clear and unambiguous language. As the statute is written, it is made the mandatory duty on the part of the county board of education to fill these vacancies, and the voters of the subdistrict are permitted, if they so desire, to present by petition names to the county board of education for its consideration in the filling of the vacancy. This right of petition on the part of the voters of the subdistrict may or may not be exercised by them as they see fit. But, whether they petition the county board or not, it is yet the duty of the county board to fill the vacancy in such trusteeship. Otherwise, in the absence of action on the part of the voters, many duties which the statute places on these subdistrict trustees would go unperformed, such as in the inspection of schools, making of recommendations for such schools, the taking of the school census, and the like. These are important duties which should be discharged by some one, and, if the county board of education's hands are tied until they are petitioned by the voters of the subdistrict, important functions of the school system may go unperformed. The Legislature did not intend any such result. Although it was the duty of the county board of education to fill this vacancy in the trusteeship of this Red Hill school district after Crafton failed to qualify, if he was appointed, or, if not, after McElwain removed from the district, it did not do so. Could the board ignore its duty of filling the vacancy in the office of subdistrict trustee, as the statute prescribes, and elect teachers for such subdistrict without there being af-

forded to a subdistrict trustee for that subdistrict an opportunity to recommend a teacher? We think not. The Legislature has in no uncertain terms outlined its policy with reference to the election of teachers in these subdistricts. See section 4399a-7 of the Statutes. It is only after the subdistrict trustee has failed after ample and reasonable opportunity to recommend a teacher that the Legislature intended the county board to elect. If the county board could, by failing to do its duty in appointing or electing a subdistrict trustee to fill a vacancy in an office, be privileged to elect a teacher, because, forsooth, there was no subdistrict trustee to make a recommendation, it could upset the policy decreed by the Legislature in section 4399a-7 of the Statutes. We are clearly of the opinion that, before the appellant board could elect a teacher for the subdistrict here in question, it was its duty to fill the vacancy in the office of subdistrict trustee for that subdistrict, and to give that appointee a reasonable time within which to recommend a teacher, which, of course, he could not do until he qualified. Having failed to do its duty in this regard, the board had no authority to elect Miss Porter when it attempted to do so in April, 1931. It made no other election, and, as the appellee, Mrs. Fowler, appeared with the proper recommendation before any legal election of a school teacher for this subdistrict was had, it was the duty of the board to elect her, it being admitted that she was in all other respects qualified. Rice v. Gilliam, 226 Ky. 613, 11 S. W. (2d) 431.

The appellants raise the question of laches because the appellee delayed the filing of her suit until eleven days after school began. But the appellants knew all along of the position of the appellee, and, if they chose to ignore her rights in the premises, it hardly lies in their mouths to say that she was guilty of laches because of her short delay in bringing her suit. The record fails to show that the appellants acted in any belief that the appellee had abandoned her right or position. On the contrary, the appellants acted entirely on the assumption that appellee had no rights. The doctrine of laches is not applicable to the situation here presented.

The judgment of the lower court being in accord with these views, it is affirmed.